Thomas A. Banducci (ISB 2453)
Jon T. Simmons (ISB 5006)
Ashton G. Ruff (ISB 12220)
**KIRTON MCCONKIE**
1100 W. Idaho St., Ste. 930
Boise, ID 83702
Telephone:  (208) 370-3325
Facsimile:  (208) 370-3324
tbanducci@kmclaw.com
jsimmons@kmclaw.com
aruff@kmclaw.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNION BLOCK ASSOCIATES LLC, and KENNETH G. HOWELL, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>TIM KEANE, an individual, CARL MADSEN, an individual, and the CITY OF BOISE, and DOES I through X.<br><br>Defendants. | Case No. 1:24-cv-00038<br><br>**COMPLAINT**<br><br>**(Demand For Jury Trial)** |

COME NOW, Union Block Associates LLC and Kenneth G. Howell for claims against

Tim Keane, Carl Madsen and the City of Boise and allege as follows:

## **PARTIES**

1.      Plaintiff Kenneth G. Howell is a resident of Ada County, Idaho.

2.      Plaintiff Union Block Associates LLC is an Idaho limited liability company in good

standing formed for the purpose of owning and developing the Union Block Building located 730

W. Idaho St. (Real Parcel Number R1013002871 Township/Range/Section 3N/2E/10 BCOT

(BOISE CITY ORIGINAL TOWNSITE).

COMPLAINT - 1

3.      Defendant Tim Keane is a resident of Ada County, Idaho and is the Director of Planning and Development Services for the City of Boise. At all times relevant, Mr. Keane was acting as an agent within the course and scope of his employment for the City of Boise.

4.      Defendant Carl Madsen is a resident of Ada County, Idaho and is the Assistant Building Official for the City of Boise. At all times relevant, Mr. Madsen was acting as an agent within the course and scope of his employment for the City of Boise.

5.      The City of Boise (hereinafter "Boise City") is a political subdivision of the state of Idaho. *See* Idaho Code § 6-902(2).

6.      DOES I through X are individuals or organizations yet to be identified who assisted in the deprivation of Plaintiffs' due process rights or republished the defamation described herein.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this matter arises under federal law and presents federal questions.

8.      Venue is proper pursuant to 28 U.S.C. § 1391 and Dist. Idaho Loc. Civ. R. 3.1.

## STATEMENT OF FACTS

9.      On November 9, 2023, with no basis in fact, notice, or justification, Boise City, through its agents, condemned the Union Block Building (the "Building"), depriving the Building's tenants of a place to work and its owner of the rights attendant to ownership of the Building, including the opportunity to improve the Building (in accordance with plans approved by the City) that would preserve and improve a more-than-century-old Boise landmark, and allow Plaintiffs to achieve the intended return on their investment in the Building.

10.     Prior to November 9, 2023, no one from Boise City had suggested that the Building was "dangerous" requiring its closure. Indeed, the 122-year-old Building had stood stable and solid

COMPLAINT - 2

over the five years of its renovation by Plaintiffs, with no indication that it presented any sort of risk to the Building's tenants or the public.

11. Specifically, the steel shoring jacks (commonly used in construction), had supported the first-floor framing of the Building for five years without any sign whatsoever that these steel posts were inadequate to support the actual loads existing in the Building during its renovation. In fact, on multiple occasions before November 9, Boise City building officials had inspected the Building, where the steel posts are in plain sight, and never once expressed concern.

12. Nevertheless, on November 9, 2023, Tim Keane, Director of Planning and Development for Boise City, directed Boise City Assistant Building Official, Carl Madsen, to issue a Notice and Order determining that the Building was a "Dangerous Building" in violation of the 1997 Uniform Code for the Abatement of Dangerous Buildings as adopted by the City of Boise (the "1997 Boise ADB Code").

13. In relevant part, the Notice and Order purportedly found "defects and conditions" existing in the Building that violated subsections 5, 7, 8, 9, 13, and 16 of Section 302 of the 1997 Boise ADB Code. Those specific provisions state that a building is "dangerous," and therefore a violation of that Code:

> "*5. Whenever any portion or member or appurtenance thereof is **likely to fail**, or to become detached or dislodged, or to collapse and thereby injure persons or damage property.*
>
> *7. Whenever any portion thereof **has wracked, warped, buckled, or settled** to such an extent that the walls or other structural portions **have materially less resistance** to winds or earthquakes than is required in the case of similar new construction.*

COMPLAINT - 3

8. *Whenever the building or structure, or any portion thereof,* **because of…the removal, movement or instability of any portion of the ground** *necessary for the purpose of supporting such building; (iv)* **the deterioration, decay or inadequacy of its foundation;** *or (v) any other cause,* **is likely to partially or completely collapse.**

9. *Whenever, for any reason, the building or structure, or any portion thereof, is* **manifestly unsafe** *for the purpose* **for which it is being used.**

13. *Whenever any building or structure has been constructed, exists, or is maintained* **in violation of any specific requirement or prohibition applicable to such building** *or structure provided by the building regulations of this jurisdiction, as specified in the Building Code or Housing Code, or of any law or ordinance of this state or jurisdiction relating to the condition, location, or structure of buildings.*

16. *Whenever any building or structure, because of obsolescence, dilapidated condition, deterioration, damage, inadequate exits, lack of sufficient fire-resistive construction, faulty electric wiring, gas connections or heating apparatus or other cause, is determined by the fire marshal to be a fire hazard.*" (Emphasis added.)

14. Because these provisions of the 1997 Boise ADB Code had been violated (according to Mr. Madsen), the Building was closed to the public, forcing the Building's tenants (Mai Thai Restaurant, Moon's Kitchen Café and Balsam Brands) to vacate their places of business at the peak of the Holiday season.

15. Additionally, the Notice and Order mandated that all necessary permits to "repair the structure" be secured, with repair work commencing in 30 days and completed within 60 days of the Notice and Order's receipt by the Plaintiffs.

COMPLAINT - 4

16.     Missing from the Notice and Order is any mention of the specific conditions in the Building that violated any of the aforementioned subsections of the 1997 Boise ADB Code.

17.     This was not an oversight by Mr. Madsen. In reality, neither Mr. Madsen nor his boss, Mr. Keane, had any sufficient or legally supportable basis for condemning the Building. Rather, it was Mr. Keane's uneducated opinion that the steel shoring jacks installed by the Building's contractors had become inadequate to support the first floor of the Building over the course of the five-year construction process—even though there was no proof that this was the case.

18.     The Correction Notice, which accompanied the Notice and Order, stated that the Building would remain closed until the steel shoring jacks were replaced with permanent posts that would "resist all loads as required per 2018 IBC [International Building Code]." By making this a condition of re-opening the Building, the Correction Notice and Notice and Order interfered with the Building's construction sequencing process (which did not contemplate installing permanent posts at that point in the renovation process) and usurped the Building renovation's design intent by rendering the basement of the Building less suitable for retail rental space.

19.     Although adequacy of the temporary shoring jacks turned out to be the "main issue" that drove the closure of the Building, Mr. Keane refused to directly acknowledge this to Mr. Howell, despite Mr. Howell's repeated attempts to understand specifically what was behind the decision to close the Building.

20.     Setting aside the fact that at the time the Notice and Order was issued there was no proof that the steel posts were:

- likely to fail, or to become detached or dislodged, or to collapse and thereby injure persons or damage property; or

COMPLAINT - 5

- wracked, warped, buckled, or had settled to such an extent that the walls or other structural portions had materially less resistance to winds or earthquakes; or

- likely to partially or completely collapse due to removal, movement or instability of any portion of the ground or the deterioration, decay or inadequacy of the Building's foundation; or

- manifestly unsafe for the purpose for which the posts were being used; or

- causing the Building to be in violation of any specific requirement or prohibition applicable to such building,

Mr. Keane and Mr. Madsen also lacked any engineering justification to require Plaintiffs to replace the steel posts with permanents supports.

21.     When Mr. Keane and Mr. Madsen directed closure of the Building, they had no knowledge of the steel shoring jacks' rated carrying capacity, the Building's load path, or the amount of the live and dead loads imposed on any given carrying member in the Building (including the steel posts). Rather, Mr. Keane condemned the Building based on his subjective (and uninformed) opinion that "temporary" steel shoring jacks were not suitable for a construction project that had taken over five years to complete. (In Mr. Keane's words: "…given that [the steel shoring jacks were] installed as a temporary measure and it now has become a five-year measure, **we're not comfortable that it's still in a position to provide the stability the building needs**.") In short, the Building was "dangerous" because Mr. Keane (who has no structural engineering expertise, as demonstrated by the above statement) said it was—not because it violated the 1997 Boise ADB Code.

22.     Moreover, Mr. Keane's and Mr. Madsen's bizarre preoccupation with replacing "temporary" supports with permanent supports during the Building's renovation phase, caused

COMPLAINT - 6

them both to miss a simple, less invasive fix that would have relieved their (unwarranted) concerns: rather than close the Building and require the installation of permanent supports (which has, to date, required a three-month-long closure of the Building), supplementary shoring jacks could have been brought in to provide additional load carrying capacity in the course of a day.

23.     Notably, Mr. Keane directed closure of the Building *even though Mr. Madsen was still in the process of gathering information about the Building to determine whether it could be considered "dangerous."* Before closing the Building, Mr. Madsen had contacted the Plaintiffs' structural engineer and requested information regarding certain conditions in the Building. Before the engineer could provide a complete response to Mr. Madsen's questions, Mr. Keane preemptively directed closure of the Building. (As Mr. Keane stated in a later meeting with Mr. Howell, *he didn't care* how the Building's structural engineer responded to Mr. Madsen's questions. Mr. Keane had decided to close the Building—whether or not it violated the 1997 Boise ADB Code.)

24.     When Mr. Keane and Mr. Madsen condemned the Building, they understood that their reckless and unsubstantiated action would cause the Building's tenants to declare a breach of their respective leases and/or vacate the Building. As a direct and foreseeable result of Mr. Keane's and Mr. Madsen's reckless behavior, Mr. Howell's company, Union Block Associates LLC, has lost long-time tenants and/or been threatened by its tenants with litigation.

25.     At the time Mr. Keane and Mr. Madsen closed the building, Mr. Keane made various statements to the media justifying his arbitrary and unsubstantiated condemnation decision. For example, Mr. Keane claimed that the building "jeopardized public safety" when he had no basis for making such a statement. Likewise, he suggested that Mr. Howell and his structural engineer were not being candid about the structural condition of the Building. This is

COMPLAINT - 7

patently untrue. Notably, Mr. Keane indicated that the Building's instability was caused by the length of time that the shoring jacks had been in place: "given that [the steel shoring jacks were] installed as a temporary measure and it now has become a five-year measure, we're not comfortable that it's still in a position to provide the stability the building needs." There is no basis in fact for such a statement, and certainly such a determination is an insufficient basis to condemn the Building. Nevertheless, Mr. Keane went out of his way to place this "determination" in the media. At the time Mr. Keane made these statements, he understood that the statements would harm the Plaintiffs' reputation as a real estate developer/development company. Mr. Keane published such statements, knowing that they would be republished in the media and by members of the Boise community.

26.     By closing the Building without a sufficient basis for doing so, Mr. Keane, Mr. Madsen and Boise City deprived Plaintiffs of a material property right without affording Plaintiffs the due process protections to which they were entitled.

27.     Sometime shortly after closing the Building, Mr. Keane realized that his decision was without sufficient engineering justification. In order to provide cover for his baseless decision, Mr. Keane retained—after the fact—a structural engineer, Greg Leishman, to perform a structural analysis of the Building. On information and belief, because Mr. Keane did not want the Plaintiffs to learn that he lacked confidence in his decision to close the Building, Mr. Keane arranged to have Mr. Leishman enter the Building surreptitiously, without notice to or permission from the Plaintiffs.

28.     On information and belief, Mr. Leishman knew or should have known that he was trespassing on the Plaintiff Union Block Associates LLC's property when he conducted his

COMPLAINT - 8

analysis of the Building. Although Mr. Leishman performed his site inspection on November 16, 2023, Boise City failed to turn Mr. Leishman's report over to the Plaintiffs for several weeks.

29.     The Leishman Report that was ultimately produced to Plaintiffs does not find that the Building is "dangerous" as per the 1997 Boise ADB Code. Indeed, it never uses the term "dangerous" or "threat to public safety." Nor does it find that the Building is "manifestly unsafe" or is "likely to fail." Indeed, there is nothing in the report that finds that any temporary steel posts were:

- likely to fail, or to become detached or dislodged, or to collapse and thereby injure persons or damage property; or

- wracked, warped, buckled, or had settled to such an extent that the walls or other structural portions had materially less resistance to winds or earthquakes; or

- likely to partially or completely collapse due to removal, movement or instability of any portion of the ground or the deterioration, decay or inadequacy of the Building's foundation; or

- manifestly unsafe for the purpose for which the posts were being used; or

- causing the Building to be in violation of any specific requirement or prohibition applicable to such building,

In essence, the report evaluates the Building's structure in generalized terms and does not identify any condition in the Building that would justify the Building's closure. More importantly, the Leishman report does not state that any problem observed with the steel posts couldn't be solved by simply supplementing the existing steel posts with additional posts.

30.     After receipt of the Notice and Order from the City informing Plaintiffs of its decision to condemn the Building, Plaintiffs properly and timely filed their notice of appeal.  At

COMPLAINT - 9

the time the appeal was filed, Plaintiffs had been led to believe by the Boise City Attorney's Office that their appeal would be handled in conformance with the provisions of the 1997 Uniform Code for the Abatement of Dangerous Buildings ("1997 Uniform Code") including Chapters 5 and 6 of the 1997 Uniform Code which pertain to appeals of condemnation decisions.  This meant that Plaintiffs' appeal would be heard by Boise City's Building Code Board of Appeals and would be conducted in a manner that assured protection of Plaintiffs' due process rights.

31. Chapters 5 and 6 of the 1997 Uniform Code provide substantive and procedural protections to persons appealing an order condemning a "dangerous" building. For example, the 1997 Uniform Code requires:

- *Timely processing of an appeal* "Upon receipt of any appeal…the building official shall present it at the next regular or special meeting of the board of appeals." (Section 501.2);

- *Timely scheduling and noticing of an appeal for hearing* "*As soon as practicable after receiving the written appeal,* the board of appeals shall fix a date, time and place for the hearing…." (Emphasis added) (Section 501.3);

- *Staying of orders on appeal* In many cases, "enforcement of any notice and order of the building official issued under this code shall be stayed during the pendency of an appeal therefrom which is properly and timely filed.….." (Section 504);

- *Appointment of independent hearing examiners*—knowledgeable in the rules of evidence—may be appointed by the board to conduct the appeal hearing. (Section 601.1);

- *The use of subpoenas* Subpoenas may be issued to compel the presence of witnesses and the production of other evidence at the appeal hearing. (Section 603.1) A person's failure to attend or produce evidence in response to a subpoena is a misdemeanor. (Section 603.3);

- *Oral evidence taken only on oath or affirmation* (Section 604.2);

- *Limitations on hearsay evidence*—hearsay evidence may be used to corroborate direct evidence but is not sufficient to support a finding unless it would be "admissible over objection in civil actions in courts of competent jurisdiction in this state." (Section 604.3)

COMPLAINT - 10

- *Exclusion of irrelevant evidence* (604.5)

- *The right to cross-examine (Section 604.6 1-6):*
Parties are entitled to:
  1. Call and examine witnesses
  2. Introduce documentary and physical evidence
  3. Cross-examine opposing witnesses
  4. Impeach witnesses
  5. Rebut evidence
  6. Be represented by counsel

- *Inspection of the premises* on proper notice, the board or hearing examiner has the authority to inspect the premises, and allow the parties to present their positions during the inspection (Section 604.7.4);

- *The right to a written decision* which finds facts and determines the issues presented (Section 605.7).

32.     Although it initially appeared to Plaintiffs that their appeal would enjoy the due process protections afforded by the 1997 Uniform Code, Plaintiffs quickly learned that their appeal would be substantially delayed for two reasons: First, because Plaintiffs had filed their appeal "during the holiday season," any hearing before the Building Code Board of Appeals would be delayed into at least January. This was because the Building Code Board of Appeals "could not be assembled" to hear the appeal until after the holidays. Second, Plaintiffs were told that a hearing would not be scheduled until after receipt by Boise City of the Leishman Report, which at that point turned out to be several weeks away.

33.     Not long thereafter, the Boise City Attorney's Office reversed itself, informing Plaintiffs that, because the City had repealed Chapters 5 and 6 of the Uniform Code, Plaintiffs' appeal would not be heard by the Building Code Board of Appeals, but instead would be heard by the Boise City Council.  Boise City's repeal of Chapter 5 and 6 of the 1997 Uniform Code effectively deprived the Plaintiffs of any of the procedural safeguards guaranteed in paragraph 31 above.

COMPLAINT - 11

34. Instead, Plaintiffs would have their appeal heard by the Boise City Council—a defendant in this action—in a presentation-style statement of positions. There would be no independent hearing examiner. There would be no oath. There would be no cross-examination of witnesses. Rules of evidence would not govern the acceptance of testimony. Plaintiffs would never have a fair opportunity to contest the condemnation decision through the presentation of evidence and cross examination of witnesses.

35. To make matters worse, Boise City has dragged its feet in issuing the permits necessary to perform the work required by the Order as a condition of reopening the Building. As noted in paragraph 15, the Notice and Order mandated that Plaintiffs obtain all necessary permits and commence work within 30 days of the Order and complete such work in 60 days. Although Plaintiffs properly applied for the necessary permits within 30 days of the Order, Boise City took another 30 days to issue the permits, making it impossible to complete the work requested in the mandated 60-day period. Such ineptitude by Boise City contradicts Mr. Keane's representations to the media when he stated that the reopening of the Building "is 100% dependent on the owner."

36. Boise City's failure to timely issue the "necessary permits" has also placed the Plaintiffs in further jeopardy. The Notice and Order provides that Plaintiffs must obtain a "Notice of Completion" for the work required by the Correction Notice no later than 60 days from the date of the Notice and Order (November 9, 2023). If the work mandated by Boise City is not completed within that 60-day period, Boise City has threatened to take over the Building renovation, perform the repairs they deem necessary, and bill Plaintiffs for the work. Given that the "necessary permits" were not issued by Boise City until January 9, 2024, 61 days after the date on the Notice Order, any action by Boise City to take over the Building's renovation and repair would be yet another violation of Plaintiffs constitutional and due process rights. To the extent that Boise City

COMPLAINT - 12

takes over the Building renovation, Plaintiffs will be seeking indemnification from Defendants for any costs or other expenses associated with Boise City's work.

37.    On January 17, 2024, roughly one month after it had received a copy of the Leishman report, Boise City finally informed Plaintiffs that the Boise City Council would hear their appeal on January 30th at a regularly scheduled City Council Meeting. The information received concerning this "hearing" confirmed that Plaintiffs will not be afforded any due process protections should they participate. In effect, the hearing is a sham. Moreover, the damage has already been done: While Boise City has scurried about attempting to line up support for its condemnation decision (after the fact) the Building's tenants have lost business and either vacated the Building or asserted claims against the Plaintiffs for the Building's closure and Plaintiffs' reputation and business relationships have been irreparably harmed.

38.    Because this lawsuit challenges the adequacy and constitutionality of the administrative procedures followed by Boise City in condemning the Building and hearing the appeal of that decision, Plaintiffs need not exhaust their administrative remedies and continue to endure insult to their procedural and substantive due process rights before pursing this action in court.

## **CLAIMS FOR RELIEF**

### **First Cause of Action**
### **42 USC 1983 claims for deprivation of civil rights**
### **(Against Defendant Tim Keane)**

39.    Plaintiffs hereby incorporate paragraphs 1 through 38 as if restated in full herein.

40.    Tim Keane, as Director of Planning and Development Services for Boise City, was acting under the color of state law when he intentionally, maliciously, arbitrarily, and without sufficient basis directed the condemnation and closure of the Building which deprived Plaintiffs of

COMPLAINT - 13

a valuable property right, i.e., the possession of, and the right to access and improve the Building which they lawfully own.

41.    Plaintiffs' property right, as described above, is guaranteed and protected by the United States Constitution.

42.    As a consequence, Plaintiffs have lost tenants in the Building that they would not have lost but for Mr. Keane's unlawful and unconstitutional actions, and Plaintiffs have been threatened by their tenants with litigation for breach of obligations contained in their lease agreements with Plaintiff Union Block Associates LLC, which would not have occurred but for Mr. Keane's wrongful deprivation of Plaintiffs' civil rights.

43.    As a further consequence of Mr. Keane's wrongful deprivation of Plaintiffs' civil rights, Plaintiffs' reputation has been wrongfully damaged in that they are now viewed as real estate developers whose business practices would endanger the Building's tenants and the public in general.

44.    As a further consequence of Mr. Keane's wrongful deprivation of Plaintiffs' civil rights, the Building has and will continue to be regarded as a dangerous building, thereby lowering the market value of the Building and making it more difficult to attract tenants to lease space within the Building.

45.    All of the harm to Plaintiffs described above was foreseeable to Mr. Keane when he recklessly, maliciously, and wrongfully deprived Plaintiffs of their civil rights.

46.    Plaintiffs have suffered damages in an amount to proven at trial.

### Second Cause of Action
**42 USC 1983 claims for deprivation of civil rights**
**(Against Carl Madsen)**

47.    Plaintiffs hereby incorporate paragraphs 1 through 46 as if restated in full herein.

COMPLAINT - 14

48.     Carl Madsen, as Boise City Assistant Building Official for the City of Boise, was acting under the color of state law when he intentionally, maliciously, arbitrarily and without sufficient basis condemned and closed the Building which deprived Plaintiffs of a valuable property right, i.e., the possession of, and the right to access and improve the Building which they lawfully own.

49.     Plaintiffs' property right as described above is guaranteed and protected by the United States Constitution.

50.     As a consequence, Plaintiffs have lost tenants in the Building that they would not have lost but for Mr. Madsen's unlawful and unconstitutional actions, and Plaintiffs have been threatened by their tenants with litigation for breach of obligations contained in their lease agreements with Plaintiff Union Block Associates LLC, which would not have occurred but for Mr. Madsen's wrongful deprivation of Plaintiffs' civil rights.  To the extent Plaintiffs' tenants do initiate litigation and Plaintiffs are determined to owe damages to said tenants, Plaintiffs will seek indemnification from Defendants for such amounts.

51.     As a further consequence of Mr. Madsen's wrongful deprivation of Plaintiffs' civil rights, Plaintiffs' reputation has been wrongfully damaged in that they are now viewed as real estate developers whose business practices would endanger the Building's tenants and the public in general.

52.     As a further consequence of Mr. Madsen's wrongful deprivation of Plaintiffs' civil rights, the Building has and will continue to be regarded as a dangerous building, thereby lowering the market value of the Building and making it more difficult to attract tenants to lease space within the Building.

COMPLAINT - 15

53.     All of the harm to Plaintiffs described above was foreseeable to Mr. Madsen when he wrongfully deprived Plaintiffs of their civil rights.

54.     Plaintiffs have suffered damages in an amount to proven at trial.

**Third Cause of Action**
**42 USC 1983 claims for deprivation of civil rights**
**Damages**
**(*Monell* Claim Against Boise City)**

55.     Plaintiffs hereby incorporate paragraphs 1 through 54 as if restated in full herein.

56.     By repealing those provisions of the 1997 Uniform Code for the Abatement of Dangerous Buildings ("1997 Uniform Code") that provided due process protections to the Plaintiffs in the event of an appeal, the City of Boise intentionally deprived Plaintiffs of their constitutional right to have the condemnation decision heard promptly and on the merits.

57.     By repealing those provisions of the 1997 Uniform Code that provided due process protections to the Plaintiffs in the event of an appeal, the City of Boise placed itself in the position of ruling on appeals where Boise City itself is a defendant.

58.     By repealing those provisions of the 1997 Uniform Code that provided due process protections to the Plaintiffs in the event of an appeal, the City of Boise acted with deliberate indifference to the constitutional rights of Plaintiffs and of any citizen wishing to appeal a decision by Boise City representatives regarding the condemnation or closure of a building within Boise City's jurisdiction.

59.     The decision by Boise City to repeal those provisions in the 1997 Uniform Code which provided due process protections to the Plaintiffs in the event of an appeal, was a moving force behind the constitutional violations alleged herein.

60.     As a consequence, Plaintiffs have lost tenants in the Building that they would not have lost but for Boise City's unlawful and unconstitutional actions, and Plaintiffs have been

COMPLAINT - 16

threatened by their tenants with litigation for breach of obligations contained in their lease agreements with Plaintiff Union Block Associates LLC, which would not have occurred but for Boise City's wrongful deprivation of Plaintiffs' civil rights.

61.     As a further consequence of Boise City's wrongful deprivation of Plaintiffs' civil rights, Plaintiffs' reputation has been wrongfully damaged in that they are now viewed as real estate developers whose business practices would endanger the Building's tenants and the public in general.

62.     As a further consequence of Boise City's wrongful deprivation of Plaintiffs' civil rights, the Building has and will continue to be regarded as a dangerous building, thereby lowering the market value of the Building, and making it more difficult to attract tenants to lease space within the Building.

63.     All of the harm to Plaintiffs described above was foreseeable to Boise City when it wrongfully deprived Plaintiffs of their civil rights.

64.     Boise City has caused harm to Plaintiffs and Plaintiffs have suffered damages in an amount to proven at trial.

**Fourth Cause of Action**
**42 USC 1983 claims for deprivation of civil rights**
**Declaratory Relief**
**(Against Boise City)**

65.     Plaintiffs hereby incorporate paragraphs 1 through 64 as if restated in full herein.

66.     Declaratory relief is proper in this matter under both the Idaho Uniform Declaratory Judgment Act, Idaho Code §§ 10-1201 *et seq.*, and the Federal Declaratory Judgment Act, 28 U.S.C.S. § 2201.

COMPLAINT - 17

67.     Under the Idaho Uniform Declaratory Judgment Act, Idaho Code §10-1201, courts have the power to declare the rights, status, and other legal relations between parties that have a genuine dispute.

68.     Idaho Code § 10-1202 provides that "[a]ny person … whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."

69.     Under the federal statute, where there is a "case of actual controversy" within the Court's jurisdiction, except in certain instances inapplicable to the present matter, the Court may, upon the filing of an appropriate pleading, "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.S. § 2201.

70.     In the present case, there is a genuine dispute between the parties and, therefore, a case or actual controversy.  Plaintiffs hereby seek a declaratory judgment from this Court stating that Boise City's adaptation of the 1997 Uniform Code is unconstitutional in that it repealed those provisions of the 1997 Uniform Code that provided due process protections to the Plaintiffs in the event of an appeal, and deprived Plaintiffs of their constitutional right to have the decision condemning and closing the Building heard promptly and on the merits.

**Fifth Cause of Action**
**Tortious Interference with Contractual Relations**
**(Against Tim Keane as Principal)**

71.     Plaintiffs hereby incorporate paragraphs 1 through 70 as if restated in full herein.

72.    At all times relevant, contracts existed between Plaintiffs and lessees of the Building.

73.    Tim Keane was aware of these landlord/lessee relationships.

74.    Mr. Keane intentionally interfered with these contractual relationships by maliciously and arbitrarily directing condemnation of the Building, knowing that condemnation of the Building would foreseeably result in the lessees breaking their lease agreements or otherwise threatening the Plaintiffs with litigation.

75.    Consequently, Plaintiffs have suffered damages in an amount to be proved at trial.

**Sixth Cause of Action**
**Tortious Interference with Contractual Relations**
**(Against Carl Madsen as Keane's Agent)**

76.    Plaintiffs hereby incorporate paragraphs 1 through 75 as if restated in full herein.

77.    At all times relevant, contracts existed between Plaintiffs and lessees of the Building.

78.    Carl Madsen was aware of these landlord/lessee relationships.

79.    Mr. Madsen, while acting within the course and scope of his employment, intentionally interfered with these contractual relationships by maliciously and arbitrarily condemning the Building, knowing that condemnation of the Building would foreseeably result in the lessees breaking their lease agreements or otherwise threatening the Plaintiffs with litigation.

80.    Consequently, Plaintiffs have suffered damages in an amount to be proved at trial.

**Seventh Cause of Action**
**Tortious Interference With Prospective Economic Gain**
**(Against Tim Keane as Principal)**

81.    Plaintiffs hereby incorporate paragraphs 1 through 80 as if restated in full herein.

COMPLAINT - 19

82.     At all times relevant, Plaintiffs possessed a viable economic expectancy in the continued operation of the Building as a commercial leasehold premises, with space to be leased to various tenants in the future.

83.     Tim Keane was aware of that economic expectancy.

84.     Mr. Keane intentionally interfered with that economic expectancy by maliciously and arbitrarily directing condemnation of the Building, knowing that condemnation of the Building would foreseeably result in a loss of future tenants.

85.     In interfering with Plaintiffs' economic expectancy, Mr. Keane had an improper purpose to harm Plaintiffs or used wrongful means to cause the injury to the prospective economic expectancy.

86.     Consequently, Plaintiffs have suffered damages in an amount to be proved at trial.

### Eighth Cause of Action
### Tortious Interference With Prospective Economic Gain
### (Against Carl Madsen as Keane's Agent)

87.     Plaintiffs hereby incorporate paragraphs 1 through 86 as if restated in full herein.

88.     At all times relevant, Plaintiffs possessed a viable economic expectancy in the continued operation of the Building as a commercial leasehold premises, with space to be leased to various tenants in the future.

89.     Carl Madsen was aware of that economic expectancy.

90.     Mr. Madsen, while acting within the course and scope of his employment, intentionally interfered with that economic expectancy by maliciously and arbitrarily condemning the Building, knowing that condemnation of the Building would foreseeably result in a loss of future tenants.

COMPLAINT - 20

91.     In interfering with Plaintiffs' economic expectancy, Mr. Madsen had an improper purpose to harm Plaintiffs or used wrongful means to cause the injury to the prospective economic expectancy.

92.     Consequently, Plaintiffs have suffered damages in an amount to be proved at trial.

**Ninth Cause of Action**
**Defamation**
**(Against Tim Keane)**

93.     Plaintiffs hereby incorporate paragraphs 1 through 92 as if restated in full herein.

94.     Tim Keane made non-privileged statements regarding Plaintiffs' practices as real estate developers which suggested that Plaintiffs, as the owners and developers of the Building had allowed the Building to fall into disrepair, threatening the safety of the Building's tenants and the public.95.  Mr. Keane's statements were false and disparaging of Plaintiffs.

96.     Mr. Keane's statements were made with malice in that they were knowingly false or made recklessly.

97.     The statements made by Mr. Keane disparaged Plaintiffs' reputation as real estate developers, and therefore amount to defamation per se.

98.     When Mr. Keane made such defamatory statements, it was reasonably foreseeable to Mr. Keane that his defamatory statements would be republished.

99.     Plaintiffs' reputation has been damaged by Mr. Keane's defamatory statements in an amount to be proved at trial.

**Tenth Cause of Action**
**(Injunctive Relief)**

100.    Plaintiffs hereby incorporate paragraphs 1 through 99 as if restated in full herein.

COMPLAINT - 21

101. In the event that Boise City seeks to assert control over the Building to perform repairs (as referenced in paragraph 36 above), such taking would be a violation of Plaintiffs' due process rights and would amount to a taking in violation of the 5th Amendment.

102. Such conduct would cause irreparable harm to the Plaintiffs for which there is no adequate remedy at law.

103. Therefore, Plaintiffs seek an order enjoining Boise City from asserting control over the Building to perform repairs of any kind.

## Eleventh Cause of Action
### (Attorneys' Fees and Costs)

104. Should Plaintiffs prevail on their claims, they may recover their reasonable costs and attorneys' fees pursuant to Federal Rule of Civil Procedure 54, 42 USC 1988(c), Idaho Code Section 12-120(3), Idaho Code Section 12-121, or relevant federal and state law.

WHEREFORE, Plaintiffs prayer for the relief as follows:

1. For damages as set forth herein;

2. For declaratory relief;

3. For Injunctive relief;

4. For Attorneys' Fees and Costs as allowed under state and federal law;

5. And such further relief as the court deems appropriate herein.

DATED this 22nd day of January 2024.

**KIRTON MCCONKIE**

*/s/ Jon T. Simmons*
Jon T. Simmons
*Attorneys for Plaintiffs*

COMPLAINT - 22