Tyler D. Williams      [ISB No. 8512]
Reid K. Peterson      [ISB No. 10091]
NAYLOR & HALES, P.C.
Attorneys at Law
999 W. Main Street, Suite 500
Boise, ID 83702
Telephone No. (208) 383-9511
Facsimile No. (208) 383-9516
Email tdw@naylorhales.com; reid@naylorhales.com

Attorneys for Defendants Tim Keane, Carl Madsen, and City of Boise

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNION BLOCK ASSOCIATES, LLC, and KENNETH G. HOWELL, an individual,<br><br>     Plaintiffs,<br><br>v.<br><br>TIM KEANE, an individual, CARL MADSEN, an individual, and the CITY OF BOISE, and DOES I through X,<br><br>     Defendants. | Case No. 1:24-CV-00038-DCN<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

Plaintiffs have been engaged in a years-long project to excavate and modify the basement of the 122-year-old Union Block Building (the "Building") in downtown Boise. Despite Plaintiffs regular failures to meet their represented deadlines and apparent disorder in the pursuit of the project, the City was patient and continued to work with them to remodel the historic building. Beginning in the spring of 2023, however, City officials became increasingly concerned by the project's delays, changes of engineers and contractors, use of unlicensed or unregistered tradespeople, and, significantly, the delay in completion of the permanent supports for the

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MSJ - 1.**

Building. The City began inquiring as to the ongoing sufficiency of the <u>temporary</u> shoring in the basement from both Plaintiffs and Plaintiffs' engineer of record, John Leonard. Despite long delays in providing a sufficient response, the City allowed Plaintiffs to continue the project and maintain occupancy of the Building. However, the concerns surrounding Plaintiffs' dilatory conduct and the Building's safety came to a head in November 2023.

In the early morning hours of November 8, 2023, a fire broke out in the building. Due to apparent sabotage by an unknown person, the Building's automatic alarm system failed to activate. Thanks to an observant passerby who reported the fire, Boise firefighters were able to extinguish the fire. Later that same day, the City received a structural report from Leonard that <u>expressly disavowed</u> any opinion as to the adequacy of the temporary shoring in the basement. He also noted that the Building's façade had separated from the Building. The City therefore inspected the Building and found a number of alarming defects, including bowing supports. The Building was plainly no longer safe for its tenants to occupy. Accordingly, on November 9, Defendants Tim Keane and Carl Madsen made the decision to declare the Building a dangerous building under the City's abatement of dangerous building code ("Boise ADB Code") and ordered it be vacated until it was properly repaired. Plaintiffs appealed the decision, but failed to participate in their appeal. As a result, the City Council denied Plaintiffs' appeal and upheld Keane and Madsen's determination. To date, Plaintiffs have yet to complete the required repairs and the Building remains closed.

Plaintiffs now wrongly claim under 42 U.S.C. §1983 that Keane and Madsen violated their substantive due process rights (Claims 1–2), that the City violated their procedural due process rights (Claims 3–4), and that the City's temporary closure of the Building constitutes inverse condemnation (Claims 10–11). They also allege under the Idaho Tort Claims Act (ITCA) that

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MSJ - 2.**

Keane and Madsen tortiously interfered with Plaintiffs' contractual relations and prospective economic gain (Claims 5-8), and that Keane defamed Plaintiffs (Claim 9). These claims all fail.

Simply put, Keane and Madsen are each entitled to qualified immunity. Plaintiff cannot prevail on the merits of the claims against them and, in any event, the law was not clearly established at the time such that either of them would have been fairly apprised that their conduct was allegedly unlawful. They cannot prevail on their inverse condemnation or procedural due process claims. Further, Plaintiffs failed to comply with their basic notice requirements of the ITCA, and the Court therefore need not even address the merits of those claims. There are no material facts in genuine dispute in this case and Defendants are entitled to summary judgment.

## II. ARGUMENT

Defendants are entitled to summary judgment on all of Plaintiffs' claims.[1] First, Keane and Madsen are entitled to qualified immunity because they did not violate Plaintiffs' constitutional rights and the law was not clearly established that their actions on November 9, 2023 violated any rights. Second, the Building's vacation is not an inverse condemnation. Third, the City provided adequate due process under the Boise ADB Code. Last, Plaintiff's tort claims must be dismissed because they failed to provide mandatory pre-lawsuit notice as required by the ITCA. Overall, Plaintiffs are entitled to no relief and summary judgment should be entered in favor of Defendants.

## A.    Tim Keane and Carl Madsen are Entitled to Qualified Immunity.

Keane and Madsen are entitled to qualified immunity, as they did not violate Plaintiffs' constitutional rights and Plaintiffs' rights in this case were not clearly established. Qualified immunity precludes liability against a government official unless a plaintiff proves "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established'

---

[1] The summary judgment standard is well-established and therefore is not being repeated here.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MSJ - 3.**

at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted). As the Supreme Court has repeatedly stated, courts are "not to define clearly established law at a high level of generality." *City & Cnty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1766 (2015). The right must instead be clearly established "in a particularized sense so that the contours of the right are clear to a reasonable official." *Reichle v. Howards*, 132 S. Ct. 2088, 2094 (2012). In other words, existing precedent at the time must "squarely govern[] the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018). The relevant inquiry is whether existing precedent establishes "beyond debate" that the official "acted unreasonably in these circumstances." *Mullenix v. Luna*, 136 S. Ct. 305, 308–10 (2015).

Once the defense is raised, the plaintiff bears the burden to show both prongs are satisfied to defeat qualified immunity. *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946 (9th Cir. 2017). Significantly, qualified immunity "is an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 527 (1985). Accordingly, the immunity "is effectively lost if a case is erroneously permitted to go to trial." *Id*.

1.    <u>Keane and Madsen did not violate Plaintiffs' rights.</u>

Plaintiffs cannot prevail on their due process claim against Keane and Madsen because they do not have a protected property right, nor could a reasonable jury conclude Keane and Madsen's conduct shocks the conscious.

a.    *Plaintiffs have no protected right to maintain a public nuisance.*

Plaintiffs do not have a property right that may be the subject of a due process claim because they do not have a right to maintain the Building as a nuisance. A plaintiff asserting the violation of due process rights "must, as a threshold matter, show a government deprivation of life, liberty, or property." *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998). Typically,

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MSJ - 4.**

state law provides the source of property rights for constitutional claims. *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 164 (1998). However, such rights in the United States come with "longstanding background restrictions." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 160 (2021). Indeed, there are a number of pre-existing limitations on a landowner's title. *Id*. (citing *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1018 (1992)). State law "cannot be the only source" of such rights, and courts must look to "traditional property law principles" in assessing the existence of property rights. *Tyler v. Hennepin Cnty.*, 598 U.S. 631, 638 (2023).

Relevant here, there is no right to engage in a nuisance on one's property. *Cedar Point Nursery*, 594 U.S. at 160. Assuming Plaintiffs have some right to continuous occupancy of the Building, that right is subject to maintaining it in a nuisance-free manner. *Id*.; *Zeyen v. Bonneville Joint Dist., #93*, 114 F.4th 1129, 1141 (9th Cir. 2024) (property rights in Idaho are subject to longstanding traditional property law principles). Thus, Plaintiffs' alleged right to continuously occupy the Building is subject to the background limitation that they have no right to engage in a nuisance on the property. *Cedar Point Nursery*, 594 U.S. at 160; Idaho Code §§ 52-101; 52-102; *Moon v. N. Idaho Farmers Ass'n*, 140 Idaho 536, 544 (2004) (the Idaho legislature has the authority to modify common law rights); *Sprenger, Grubb & Assocs., Inc. v. City of Hailey*, 127 Idaho 576, 581 (1995) ("a property owner has no vested interest in the highest and best use of his land, in the solely monetary sense of that term"). Accordingly, Plaintiffs cannot pursue a substantive due process claim against Keane or Madsen, as they do not have a property interest that was deprived. Plaintiffs have no right to have the Building occupied while it is a nuisance. Keane and Madsen are entitled to summary judgment on Plaintiffs' substantive due process claims.

      b.    *Keane and Madsen's actions were reasonable, and Plaintiffs cannot show their conduct was arbitrary, egregious, unlawful, or an abuse of power.*

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MSJ - 5.**

Issuing the Notice and Order and vacating the Building did not violate Plaintiffs' substantive due process rights. "The Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (cleaned up). Whether substantive due process is violated turns on the nature of the challenged governmental conduct; plaintiffs must allege conduct that shocks the conscience and offends the community's sense of fair play and decency. *Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1195 (9th Cir. 2013). This requires consideration of the justification the government offers for the alleged infringement. *Reno v. Flores*, 507 U.S. 292, 301–02 (1993); *MHC Financing Ltd. P'ship v. City of San Rafael*, 714 F.3d 1118 (9th Cir. 2013). Where executive action is at issue, such action must amount to an "abuse of power" lacking any "reasonable justification in the service of a legitimate governmental objective." *Shanks v. Dressel*, 540 F.3d 1082, 1888 (9th Cir. 2008). Ultimately, substantive due process secures individuals only from arbitrary government action that rises to the level of egregious conduct, not from reasonable, though possibly erroneous, actions. *Brittain v. Hansen*, 451 F.3d 982 (9th Cir. 2006).

The Boise ADB Code undoubtedly reflects a legitimate government objective: providing a process "whereby buildings or structures which, from any cause, endanger the life, limb, health, property, safety or welfare of the general public or their occupants, may be required to be repaired, vacated or demolished." Boise City Code ("BCC") § 9-11-1. To that end, "[a]ll buildings or portion thereof which are determined… to be dangerous as defined in this code are hereby declared to be public nuisances and shall be abated by repair, rehabilitation, demolition or removal." 1997 ADB Code, Section 202. Accordingly, when a building has one or more of the conditions or defects set forth in the code, and that condition endangers life, health, property, or safety of the public, the

building is dangerous. 1997 ADB Code, Section 302. In such case, the building official is obligated to act. 1997 ADB Code, Section 401.1 ("When the building official… has found and determined that such building is a dangerous building, the building official <u>shall</u> commence proceedings to cause the repair, vacation or demolition of the building.") (emphasis added).

Based on the information then in their possession and their November 8 inspection, Keane and Madsen identified six different conditions or defects listed in Section 302 were present in the Building, and that these conditions endangered life, health, property, or safety of the public. (Dkt. 42-4, Ex. F.) These six conditions or defects from Section 302 were:

5. Whenever any portion or member or appurtenance thereof is likely to fail, or become dislodged, or to collapse and thereby injure or damage property.

7. Whenever any portion thereof has wracked, warped, buckled or settled to such an extent that the walls or other structural portions have materially less resistance to winds or earthquakes than is required in the case of similar new construction.

8. Whenever the building or structure, or any portion thereof, because of … (iii) the removal, movement or instability of any portion of the ground necessary for the purpose of supporting such building; (iv) the deterioration, decay or inadequacy of its foundation… is likely to partially or completely collapse.[2]

9. Whenever, for any reason, the building or structure, or any portion thereof, is manifestly unsafe for the purpose for which it is being used.

13. Whenever any building or structure has been constructed, exists or is maintained in violation of any specific requirement or prohibition applicable to such building or structure provided by the Building Code or Housing Code, or of any law or ordinance of this state or jurisdiction relating to the condition, location or structure of buildings.

16. Whenever any building or structure, because of obsolescence, dilapidated condition, deterioration, damage, inadequate exits, lack of sufficient fire-resistive construction, faulty electric wiring, gas connections or heating apparatus, or other cause, is determined by the fire marshal to be a fire hazard.

---

[2] The language "is likely to partially or completely collapse" from the 1997 ADB Code was inadvertently omitted from the Notice and Order. *Compare* Dkt. 42-4, Ex. F *with* 1997 ADB Code, Section 302

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MSJ - 7.**

1997 ADB Code, Section 302; (Dkt. 42-4, Ex. F.) In support of this determination, Keane and Madsen provided Plaintiffs with the Correction Notice, containing the specific issues in need of correction. (Dkt. 42-4, ¶ 5, Ex. F; *see also* Dkt. 42-1, ¶ 10.)

In prior briefing, Plaintiffs spill a significant amount of ink on the phrase "imminent danger of collapse" and whether the Building met this hypothetical condition. But in so doing, Plaintiffs ignore the actual grounds for the determination that the Building was dangerous. Indeed, this phrase appears nowhere in either the Notice and Order or Correction Notice. (*See* Dkt. 42-4, Ex. F.) Nor does it appear in either the 1997 ADB Code or the Boise ADB Code. Notably, the determination that any one of the conditions or defects listed in the Notice and Order existed in the Building was sufficient to deem it a dangerous building and order it vacated. 1997 ADB Code, Section 302 ("…any building or structure which has <u>any</u> or all of the conditions or defects…") (emphasis added). A building that "does not constitute an immediate danger to the life, limb, property or safety of the public … <u>may be vacated</u>, secured and maintained against entry." 1997 ADB Code, Section 403.1.3 (emphasis added). Or, if the building is "immediately dangerous to the life, limb, property or safety of the public or its occupants, it <u>shall be ordered to be vacated</u>." 1997 ADB Code, Section 403.2 (emphasis added). Thus, whether the Building was in "imminent danger of collapse" is immaterial; this is simply <u>not</u> the benchmark by which building closures under the ADB are evaluated.

Keane and Madsen's conduct in reasonably determining the Building was a dangerous building was in service of public safety. Plaintiffs therefore cannot show that Keane or Madsen's actions violated their due process rights. In fact, after months of raising concerns to Plaintiffs over the state of the structural support of the Building, Plaintiffs' engineer of record submitted a report expressly disavowing any opinion on the adequacy or design of the Building's temporary support.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MSJ - 8.**

(Dkt. 42-3, Ex. C.) Leonard's report further stated that "[i]t appears that the stone façade column has shifted away from the building." (*Id.*, Ex. C, BOISE 1749.) Based on their concerns, Keane and Madsen entered the Building to get a firsthand view of the state of the Building and the temporary supports. (Dkt. 42-4, ¶ 4.) What they found was highly concerning.

Among other things, they observed the following:

- The east foundation wall had been undermined and appeared to be supported by the neighboring building;

- The Idaho Street stone façade column had shifted away from the Building and was thus in danger of falling outward onto the sidewalk and street (which was at that time fully open to vehicles and pedestrians);

- The alley side stone façade columns had also shifted away from the Building;

- Floor joists supporting the first floor lacked support;

- Items contained in a prior May 23, 2023 Fire Code Correction Notice remained uncorrected;

- Temporary shoring beams were bowing under the weight of the Building;

- They also discovered that the Building's fire alarm system appeared to have been sabotaged with two screws/nails driven into the system preventing it from activating, resulting in the failure of the system during the fire early on November 8th.

(SOF ¶ 16.) The extent of the dangerous conditions present meant that simply requiring Plaintiffs to install additional temporary shoring would not suffice.

Each of these conditions and defects alone justified, at a minimum, discretionary vacation of the Building; altogether, they created an immediate danger to the Building's tenants, their employees and  customers, and the unsuspecting public traveling along the sidewalk or Idaho

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MSJ - 9.**

Street, requiring immediate action to protect the public.[3] Denying access to the general public and tenants while allowing continued access to construction and engineering staff was well within Keane and Madsen's legal authority under the ADB in order to advance a legitimate government interest in protecting the public from serious risk of harm or death (concerns that have been greatly minimized by Plaintiffs in this case). *See Flint v. Cnty. of Kauai*, 521 F. Supp. 3d 978, 996 (D. Haw. 2021). No reasonable jury could conclude that their conduct was arbitrary or wrongful. Simply put, neither Keane nor Madsen violated Plaintiffs' substantive due process rights.

   3.   The law was not clearly established under the circumstances of this case.

For the purposes of qualified immunity, the relevant question is whether a reasonable official in that official's position could have believed, in light of clearly established legal principles, that his conduct was lawful. *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001). Plaintiffs must therefore direct the Court to precedent "squarely governing the specific facts at issue." *Kisela*, 138 S. Ct. at 1153. This must be in the form of "controlling authority" or a "robust consensus of cases of persuasive authority." *Hart v. City of Redwood City*, 99 F.4th 543, 555 (9th Cir. 2024) (quoting *Dist. of Columba v. Wesby*, 583 U.S. 48, 64 (2018). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

---

[3] Leishman's independent report after the fact was not necessary to close the building, but it nonetheless supported Keane and Madsen's decision to do so. For example, Leishman's calculations found that the bowing temporary support beams were overloaded by approximately a factor of three. (Dkt. 42-3, Ex. D, BOISE 1753.) Despite Plaintiffs' counsel's contention at oral argument for their preliminary injunction motion, 14,400 divided by 4,200 is approximately 3.4, meaning the posts were overloaded by a factor of 3.4x their rated load. (*Id.*) These calculations are based on the requirements of the Uniform Building Code, not some hypothetical. (Dkt. 36-4, 65:21–67:1.) Leishman's report therefore provides after-the-fact context for the level of danger Keane and Madsen perceived on November 8th, regardless of whether Leishman analyzed the building under the ADB.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MSJ - 10.**

Plaintiffs cannot show any such controlling authority or robust consensus in this case that would deprive Keane and Madsen of qualified immunity. There simply is no case in which a building official was liable for violating a building owner's substantive due process rights for declaring a building dangerous ordering it temporarily vacated in order to protect the public, when confronted with bowing temporary support beams, undermined foundations, façade columns pulling away from a building, detached floor diaphragms, unsupported floor joists, and multiple fire code violations, as well as a landowner's own engineer refusing to provide assurances of structural integrity.

Because the law was not clearly established on November 9, 2023, such that Keane and Madsen would have been fairly apprised under the circumstances of this case that their conduct allegedly violated Plaintiffs' substantive due process rights, they are entitled to qualified immunity.

**B.    The Vacating of the Building is not an Inverse Condemnation.**

An inverse condemnation action cannot be maintained unless an actual taking of private property is established. *Covington v. Jefferson Cnty.*, 137 Idaho 777, 780 (2002). But Plaintiffs have disclaimed a taking claim against the City.[4] (Dkt. 46, p. 2.) In any event, inverse condemnation claims cannot be asserted when there is no property right and the City's action was for the preservation of public health and safety. It therefore does not constitute a taking. Further, the City's action does not meet any of the categories of regulatory takings requiring compensation. Because Plaintiffs cannot show a taking, they cannot prevail on their inverse condemnation claim.

1.    Plaintiffs do not have a protected property right.

---

[4] Despite this disclaimer, the First Amended Complaint alleges each of the types of regulatory takings recognized by the U.S. Supreme Court. (*See* Dkt. 21, ¶¶ 105–108.) However, as set forth herein, all of Plaintiffs' claims in this regard—whether categorized as takings or inverse condemnation—fail.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MSJ - 11.**

There cannot be a taking—and therefore an inverse condemnation—unless a plaintiff shows a vested property right that was subject to the taking. *Zeyen v. Bonneville Joint Dist., #93*, 114 F.4th 1129, 1139–41 (9th Cir. 2024). As set forth in Section II.A.1.a., *supra*, Plaintiffs do not have a vested property right in maintaining a public nuisance. Accordingly, they cannot establish an actual taking of private property and therefore no inverse condemnation. *Covington*, 137 Idaho at 780. The City is entitled to summary judgment on Plaintiffs' inverse condemnation claim.

2. <u>Because vacating and abating the Building under the Boise ADB Code is a measure to preserve the public health and safety, it is not a taking</u>.

The temporary vacation of the Building was for the preservation of health and safety and therefore is not a taking. Regulatory action is not a taking where it abates a nuisance on a property: "Long ago it was recognized that 'all property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community.'" *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 491–92 (1987) (quoting *Mugler v. Kansas*, 123 U.S. 623, 665 (1887)). The interference with the use of property, even barring its use, "for purposes that are declared, by valid legislation, to be injurious to the health, morals, or safety of the community, cannot, in any just sense, be deemed a taking or appropriation of property." *Id*. at 489 (quoting *Mugler*, 123 U.S. at 668–69)). Therefore, no taking has occurred when the property is determined to be a nuisance. *Cedar Point Nursery*, 594 U.S. at 160 ("the government owes a landowner no compensation for requiring him to abate a nuisance on his property, because he never had a right to engage in the nuisance in the first place."); *see also Intermountain West, Inc. v. Boise City*, 111 Idaho 878, 880 (1986) (stop-work orders and denials of building permits do not amount to a taking); *Covington*, 137 Idaho at 781 (inverse condemnation claims require a permanent deprivation). In such situations, it is therefore unnecessary to analyze any of the regulatory takings tests. *Cedar Point Nursery*, 594 U.S. at 160.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MSJ - 12.**

The Boise ADB Code governs "buildings endangering life, limb, health, property, safety or welfare of the general public or their occupants," BCC § 9-11-2. It therefore provides a method whereby such buildings "may be required to be repaired, vacated or demolished." BCC § 9-11-1. To that end, the Boise ADB Code does not permit a building owner to "erect, construct, enlarge, alter, repair, move, improve, remove, convert or demolish, equip, use, occupy or maintain any building or premises, or cause or permit the same to be done, contrary to or in violation of any of the provisions of the Uniform Code for the Abatement of Dangerous Buildings and the Boise City Code." BCC § 9-11-3, Section 203. The code defines a "dangerous building" as one which contains conditions or defects "to the extent that the life, health, property or safety of the public or its occupants are endangered." 1997 ADB Code, Sections 301, 302. These defects are enumerated as eighteen separate conditions, each of which could render a building dangerous under the code. 1997 ADB Code, Section 302.

The City's authority to enact and enforce such a code is expressly granted to it by state law. Idaho law empowers cities to "declare what shall be deemed nuisances,[5] to prevent, remove and abate nuisances at the expense of the parties creating, causing, committing or maintaining the same…" Idaho Code § 50-334. It further provides cities "shall have the power to declare any building or structure to be a nuisance which, in the opinion of the city council, is so dilapidated or is in such condition as to menace the public health or the safety of persons or property on account of increased fire hazard or otherwise…" Idaho Code § 50-335. In doing so, "any council may cause the destruction or removal of any such building or structure at the expense of the person or persons,

---

[5] In general, Idaho law defines a nuisance as "[a]nything which is injurious to health or morals," and includes public nuisances—affecting "any considerable number of persons." Idaho Code §§ 52-101, 52-102. Activities that create dangerous and hazardous conditions "if not done with adequate and proper precautions and by proper means and methods" are deemed nuisances. *Lundahl v. City of Idaho Falls*, 78 Idaho 338, 346 (1956).

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MSJ - 13.**

associations, corporations or copartnerships holding, owning or maintaining the same…" *Id.*[6] The City's invocation of the Boise ADB Code is therefore an exercise of its police powers to preserve health and safety and does not constitute a taking. Accordingly, the City determining the Building was a dangerous building and requiring it be vacated under the Boise ADB Code does not constitute a taking, and the City is entitled to summary judgment on Plaintiffs' inverse condemnation claim.

      3.    <u>The City's action does not implicate any of the categories of regulatory takings</u>.

The City's action does not constitute a regulatory taking. "The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005). However, regulatory action can also constitute a taking in particular circumstances. *Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610, 625 (9th Cir. 2020). A *Loretto* taking occurs "where government requires an owner to suffer a permanent physical invasion of her property." *Lingle*, 544 U.S. at 538 (citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982)). A *Lucas* taking occurs where a regulation "completely deprive[s] an owner of '*all* economically beneficial us[e]' of her property." *Id.* (quoting *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019 (1992)) (emphasis in original). Both *Loretto* and *Lucas* takings are per se takings, but are "relatively narrow." *Id.*

Neither *Loretto* nor *Lucas* takings are implicated here. A *Loretto* taking is not cognizable where a regulation merely bans certain private uses of a portion of the owner's property. *Tahoe-*

---

[6] The enforcement of building codes and compliance with building standards is of such public importance that the State requires all cities issuing building permits and enforcing building codes to adopt specific codes and maintain minimum standards for building construction. Idaho Code § 39-4116(2), (4).

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MSJ - 14.**

*Sierra Pres. Council, Inc. v. Taho Reg'l Planning Agency*, 535 U.S. 302, 323 (2002) (citing *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926)). Instead, such a *Loretto* claim requires a showing that the regulation results in a permanent occupation. *Loretto*, 458 U.S. at 434. A *Lucas* taking requires a deprivation of "*all* economically beneficial us[e]" of the property. *Bridge Aina Le'a*, 950 F.3d at 626. It therefore requires a showing a "complete elimination of a property's value." *Id*. at 627 (citing *Lingle*, 544 U.S. at 539). Anything less than a complete elimination of value requires a *Penn Central* analysis. *Id*. Because the vacation of the Building is only temporary in nature and does not involve any occupation, it cannot constitute a "permanent physical invasion" or a "complete elimination" of the Building's value.

For all other claimed regulatory takings, courts evaluate the regulatory action to determine whether it is functionally equivalent to a physical invasion using "essentially ad hoc, factual inquiries, designed to allow careful examination and weighing of all the relevant circumstances." *Tahoe-Sierra*, 535 U.S. at 322. Courts evaluate these claims under the factors set forth in *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104 (1978). *Penn Central* requires a court to consider: (1) "[t]he economic impact of the regulation on the claimant," (2) "the extent to which the regulation has interfered with distinct investment-backed expectations," and (3) "the character of the governmental action." *Id*. at 124. The consideration of these factors aims "to determine whether a regulatory action is functionally equivalent to the classic taking." *Guggenheim v. City of Goleta*, 638 F.3d 1111, 1120 (9th Cir. 2010) (en banc) (cleaned up). When viewing these factors, the City's action does not constitute a regulatory taking.

First, any economic impact or diminution in the Building's valuation would not arise to the level required for a takings claim. Because "[n]ot every diminution in property value caused by a government regulation rises to the level of an unconstitutional talking," courts are hesitant to

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MSJ - 15.**

conclude that diminutions in property value less than 75% can constitute a taking. *Colony Cove Properties, LLC v. City of Carson*, 888 F.3d 445, 451 (9th Cir. 2018); *MHC Fin. Ltd. v. City of San Rafael*, 714 F.3d 1118, 1127 (9th Cir. 2013). Significantly (despite agreeing to produce documentation with their initial disclosures), Plaintiffs have yet to produce <u>any</u> documentary evidence in this case to Defendants, including any estimation or categorization of their claimed damages. There is thus no evidence of the alleged economic impact or diminution of the value of the Building, and this factor weighs heavily in favor of the City.

Second, there is no reasonable expectation by investors that there will be uninterrupted occupancy of a building that fails to comply with a jurisdiction's health and safety or building code requirements. "Unilateral expectation[s]" or "abstract need[s]" cannot form the basis of a claim that the government has interfered with property rights. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005 (1984). The existing regulatory environment is a relevant and important consideration. *Bridge Aina Le'a*, 950 F.3d at 634. Thus, an expectation that a property owner could utilize the property "with absolutely no limitations or restrictions is not reasonable." *Flint v. Cnty. of Kauai*, 521 F. Supp. 3d 978, 991 (D. Haw. 2021). And restrictions which are temporary in nature do not "interfere with the viability of the property as a long term… investment." *Id*. (citing *Tahoe-Sierra*, 535 U.S. at 342). Where, as here, the Boise ADB Code and relevant building codes were long in place at the time a building owner commences construction, an expectation to retain occupancy when the building violates those existing codes is unreasonable. Further, the temporary nature of the vacation of the Building means that it does not interfere with reasonable expectations. *Id*. The regulation of the conditions of buildings for the public good "are the burdens we all must bear in exchange for the advantage of living and doing business in a civilized community." *Ruckelshaus*, 467 U.S. at 1007 (cleaned up). Accordingly, the second factor favors the City.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MSJ - 16.**

Third, the character of the government action in this case is paramount. Government regulation "adjusting the benefits and burdens of economic life to promote the common good" are not takings. *Penn Central*, 438 U.S. at 124. Thus, regulatory action promoting "the health, safety, morals, or general welfare" advance a paramount governmental interest. *Id*. at 125. These actions need only attempt "to arrest what it perceives to be a significant threat to the common welfare" to favor a city's actions. *Keystone Bituminous*, 480 U.S. at 485. For example, requiring nonconforming buildings to meet uniform standards is "directed toward protecting the health and welfare of citizens and visitors." *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 967 (9th Cir. 2003). Such actions are therefore not takings. *Id*. Nor can the revocation of a once valid permit—such as an occupancy permit—form the sole basis of a takings claim. *Lakeview Dev. Corp. v. City of South Lake Tahoe*, 915 F.2d 1290, 1295 (9th Cir. 1990). Here, the City's invocation of the Boise ADB Code squarely focuses on the safety of the general public and occupants of the Building. It therefore cannot be construed as a taking. The third factor weighs heavily in favor of the City.

Because the City's action does not constitute either a *Loretto* or *Lucas* taking, and the *Penn Central* factors weigh heavily in favor of the City, the City's actions do not constitute a regulatory taking. The City is entitled to summary judgment on Plaintiffs' inverse condemnation claim.[7]

**C.    The Boise ADB Code Provides Sufficient Due Process.**

As set forth in Defendants' Response to Plaintiffs' Motion for Partial Summary Judgment (Dkt. 42) and Defendants' Response to Plaintiffs' Ex Parte Motion for Expedited Temporary Restraining Order and Plaintiffs' Motion for Preliminary Injunction (Dkt. 45), the City's process

---

[7] Plaintiffs' claims for injunctive relief against the City fail for the same reasons. (*See* Dkt. 21, ¶¶ 100–103.)

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MSJ - 17.**

under the Boise ADB Code satisfies due process. Defendants therefore hereby incorporate in full the arguments set forth in Section III of Dkt. 42 and Section IV.C of Dkt. 45.[8] At oral argument on these motions, Plaintiffs suggested that the City's decision to close the Building and deny the appeal was incorrect which therefore showed a procedural due process violation. But the right to procedural due process does not encompass the right to a particular outcome.[9] *Ching v. Mayorkas*, 725 F.3d 1149, 1156 (9th Cir. 2013); *see also Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 590 (9th Cir. 1998) (rejecting the argument that because a claimant was denied a permit the procedure was inherently inadequate). Where due process is provided, it is immaterial whether Plaintiffs believe the outcome is correct.

Additionally, a due process claim "must, as a threshold matter, show a government deprivation of life, liberty, or property." *Nunez*, 147 F.3d at 871. As set forth in Section II.A.1.a., *supra*, Plaintiffs do not have a property right in maintaining a public nuisance. They therefore cannot show that the Boise ADB Code violates their procedural due process rights. Finally, a pre-deprivation hearing is not required in an emergency. *Gilbert v. Homar*, 520 U.S. 924, 930 (1997). Where there is an "important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted," a city is justified in delaying "the opportunity to be heard until after the deprivation." *FDIC v. Mallen*, 486 U.S. 230, 240 (1988). As set forth above, the City's significant interest in protecting the unsuspecting public from harm and the actual conditions and defects observed by Keane and Madsen mean that the denial of pre-deprivation was appropriate and necessary. Again, the Boise ADB Code therefore does not violate procedural due

---

[8] Plaintiffs have stubbornly refused to acknowledge that had the appeal been heard by the Building Code Board of Appeals, it would have followed an identical procedure as was utilized by the City Council on their appeal. *See* Boise City Code § 9-1A-39, Sections 113.4 & 113.5.

[9] Indeed, *Mathews* requires evaluating the <u>risk</u> of an erroneous deprivation, not whether the deprivation was actually erroneous. *Mathews*, 424 U.S. at 335.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MSJ - 18.**

process in providing only a post-deprivation hearing. The City is entitled to summary judgment on Plaintiffs' procedural due process claim.[10]

## D.  Plaintiffs' State Law Claims are Barred by their Failure to Comply with the Idaho Tort Claims Act.

Plaintiffs allege several tort claims against Keane and Madsen under the ITCA for tortious interference and defamation. Yet they failed to comply with the plain language of the statute and did not file their notice of tort claim until the same day they filed the present lawsuit. The state claims must therefore be dismissed without the need to address their merits.

Under the ITCA "[n]o claim or action shall be allowed against a governmental entity or its employee unless the claim has been presented and filed within the time limits prescribed by this act." Idaho Code § 6-908. A claim must be filed against a city or its employee within 180 days of when the claim accrued. Idaho Code § 6-906. Once a claim is filed, the city has 90 days to approve or deny a claim. Idaho Code § 6-909. If the city takes no action within that time, the claim is deemed denied. *Id*.

A plaintiff may only file a complaint with ITCA claims after the claim is either actually denied or deemed denied. Idaho Code § 6-910; *Community House, Inc. v. City of Boise*, No. CV-05-283-S-BLW, 2008 WL 2857458, at *2 (D. Idaho, July 22, 2008). The notice and subsequent 90-day period before filing a lawsuit serve three important purposes: "(1) [they] save needless expense and litigation by providing an opportunity for amicable resolution of the differences between parties, (2) [they] allow authorities to conduct a full investigation into the cause of the injury in order to determine the extent of the state's liability, if any, and (3) [they] allow the state to prepare defenses." *Dodge v. Bonners Ferry Police Dep't*, 165 Idaho 650, 655 (2019).

---

[10] Plaintiffs' claims for declaratory and injunctive relief against the City fail for the same reasons. (*See* Dkt. 21, ¶¶ 65–70, 100–103.)

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MSJ - 19.**

Accordingly, observing the time limits of ITCA is a prerequisite to bringing a claim under the Act. *Bliss v. Minidoka Irr. Dist.*, 167 Idaho 141, 152 (2020). "Compliance with [the] notice requirement is mandatory and failure to observe it results in dismissal of the claim." *Id*; *see also Allied Bail Bonds, Inc. v. Cnty. of Kootenai*, 151 Idaho 405, 410 (2011) (compliance with notice requirements of ITCA "is a mandatory condition precedent to bringing suit, the failure of which is fatal to a claim, no matter how legitimate.").

Plaintiffs served their notice of tort claim on the City Clerk on January 22, 2024. (SOF ¶ 23.) They filed their original Complaint that same day. (Dkt. 1.) Rather than follow ITCA's timing requirements and allowing the City 90 days to either approve or deny the claim, Plaintiffs brought suit with their ITCA claims at the exact same time. Doing so violates the mandatory notice requirements of ITCA.[11] Because Plaintiffs failed to comply with the timing requirements of ITCA, their state law claims must be dismissed.

## IV. CONCLUSION

Each of Plaintiffs' claims fails as a matter of law. Plaintiffs failed to comply with the Idaho Tort Claims Act, and their state law claims are therefore barred. Plaintiffs do not possess a property right to maintain the Building as a nuisance, and they therefore cannot pursue due process or takings claims. Keane and Madsen did not violate Plaintiffs' rights and are entitled to qualified immunity in any event. The City did not engage in a taking, and the Boise ADB Code satisfies due process. Accordingly, Defendants are entitled to summary judgment on all of Plaintiffs' claims.

DATED this 7th day of January, 2025.

---

[11] To comply with ITCA's mandatory notice requirements, Plaintiffs were required to have either waited to file their complaint, or omitted their state law claims from the original complaint and later amended to add ITCA claims once they were actually or deemed denied. *See Farnworth v. Fleming*, 125 Idaho 283, 288–89 (1993); *Community House, Inc.*, 2008 WL 2857458, at *2. It is, however, too late for them to remedy their failure.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MSJ - 20.**

NAYLOR & HALES, P.C.


By */s/ Reid K. Peterson*_____
    REID K. PETERSON, Of the Firm
    Attorneys for Defendants Tim Keane, Carl
    Madsen, and City of Boise

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of January, 2025, I caused to be electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following person(s):

| | |
|---|---|
| Thomas A. Banducci | tbanducci@kmclaw.com |
| Jon T. Simmons | jsimmons@kmclaw.com |
| Christine R. Arnold | carnold@kmclaw.com |
| Ashton G. Ruff | aruff@kmclaw.com |
| *Attorneys for Plaintiffs* | |

*/s/ Reid K. Peterson*_____
REID K. PETERSON

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MSJ - 21.**