UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNION BLOCK ASSOCIATES, LLC, and KENNETH G. HOWELL, an individual,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>TIM KEANE, an individual; CARL MADSEN, an individual; the CITY OF BOISE; and DOES I though X,<br><br>　　　　Defendants. | Case No. 1:24-cv-00038-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Plaintiffs Union Block Associates, LLC and Kenneth G. Howell's (collectively "Plaintiffs") Expedited Motion for Temporary Restraining Order (Dkt. 29) and Motion for Preliminary Injunction (Dkt. 35). In these two Motions, Plaintiffs ask the Court to intervene and require that Defendants both stop certain actions and start other actions that relate to the renovations of their property in downtown Boise. Defendants oppose both Motions. Dkt. 45.

The Court held oral argument on December 18, 2024, and took both matters under advisement. Upon review, and for the reasons set forth below, the Court GRANTS in PART and DENIES in PART both Motions.

## II. BACKGROUND

### A. Statutory

The City of Boise ("the City") has adopted, in part, the 1997 Uniform Code for the Abatement of Dangerous Buildings (the "1997 ADB Code"). Boise City Code § 9-11-2, available at https://codelibrary.amlegal.com/codes/boise_id/latest/overview. The purpose of this code is to provide a procedure "whereby buildings or structures which, from any cause, endanger the life, limb, health, property, safety or welfare of the general public or their occupants, may be required to be repaired, vacated or demolished." Boise City Code § 9-11-1.

Relevant to this lawsuit, the City has amended or repealed three portions of the 1997 ADB Code. Boise City Code § 9-11-2-1.

First, Section 205.1 of the 1997 ADB Code has been amended to state that any appeal of a determination that a building is dangerous is to be heard by the Boise City Council ("City Council") and such appeal must be filed within ten (10) days of such determination. Boise City Code § 9-11-4. Second, Chapter 5 of the 1997 ADB Code, which governs the filing and hearing of appeals, has been deleted and repealed in its entirety. Boise City Code § 9-11-5. Third, Chapter 6 of the 1997 ADB Code, which governs the procedural aspects of an appeal hearing, has been deleted and repealed in its entirety. Boise City Code § 9-11-6.

### B. Factual

Plaintiffs purchased the Union Block Building ("the Building") in downtown Boise in 1996. As part of the purchase agreement, Plaintiffs agreed to undertake certain

renovations to ensure the 122-year-old building remained safe and usable. Initial upgrades to the building's HVAC system and overall structure—among other things—were completed without incident.

Beginning in 2017, Plaintiffs began renovating the Building's basement so they could lease it to tenants. Because these renovations involved changing floor and ceiling height, temporary "shoring" posts were used to stabilize the building. In May 2023, Defendants began expressing concerns with how long the project was taking (at that point, well into its sixth year). Defendants also expressed concerns with the sufficiency of the temporary shoring, suggesting more permanent posts were necessary.[1]

On November 8, 2023, a passerby noticed a fire in the Building. Boise fire crews were able to extinguish the fire. They also determined the fire originated in the kitchen of one of the Building's restaurant tenants. Notably, neither the Building's automated fire suppression system, nor its fire alarm, activated during the fire—despite the fire being of sufficient size that both should have activated.

This fire (and the failure of the fire activation system), alongside earlier concerns about the project-completion timeline and the integrity of the temporary shoring, prompted Defendants to enter the Building later that day (on November 8, 2023), to perform an inspection.

Based on the results of that inspection, on November 9, 2023, the City issued a

---

[1] This "shoring" situation became a point of contention between the parties for many months. Specifically, the question was when, if at all, permanent posts needed to be installed, whether prior posts that had been approved were sufficient moving forward, and who had the authority to make those decisions. As the Plaintiffs note, it was essentially a "power struggle" between the two parties. Dkt. 35-1, at 7. This is a very fact-intensive dispute and will be discussed in more depth in future decisions.

Notice of Violation and Order to Vacate ("Notice and Order") for the Building. The Notice and Order declared the Building "dangerous" and required that all tenants immediately vacate the premises based upon numerous code violations. The Notice and Order was accompanied by a Correction Notice that listed what Plaintiffs would need to correct before any tenants could return. Finally, the Notice and Order outlined a timeline for Plaintiffs to complete the necessary work and explained the procedures Plaintiffs could utilize if they wanted to appeal the decision.[2]

On November 20, 2023, the parties met to discuss matters. Defendants informed Plaintiffs they had retained an independent third-party engineer to produce a report on the soundness of the Building. Plaintiffs indicated they intended to appeal Defendants' determination that the Building was unsafe. The parties discussed the parameters of any appeal hearing, but a consensus was not reached.

Defendants then scheduled the appeal hearing for January 30, 2024. Plaintiffs were provided notice of the hearing.

On January 22, 2024, Plaintiffs filed the instant lawsuit. Dkt. 1.[3]

Plaintiffs did not appear or participate in any way at the appeal hearing on January 30, 2024.

---

[2] Like the shoring issue mentioned above, the scope, purpose, findings, and ramifications of the inspection and the applicable code sections is a very fact sensitive inquiry. Those disputes are addressed more in the parties' Motions for Summary Judgment. Thus, while discussed in this decision, the Court will also analyze these issues more fully as part of those decisions.

[3] In their original complaint, Plaintiffs brought multiple § 1983 causes of action for deprivation of civil rights, claims for tortious interference with contractual relations and prospective economic gain, and defamation. *See generally* Dkt. 1.

At said hearing, Defendants presented their initial report to the City Council, their third-party engineering report, and testimony from relevant stakeholders. Absent any argument from Plaintiffs, the City Council denied Plaintiffs' appeal and reaffirmed the prior finding that the Building was dangerous.

Since the appeal hearing, Plaintiffs have corresponded with Defendants about their progress on the repairs outlined in the Notice and Order. Plaintiffs have not, however, had any of their work inspected since March 27, 2024, and thus, their building permits have expired.

On June 21, 2024, Plaintiffs filed their First Amended Complaint. Dkt. 21.[4]

On August 8, 2024, the City requested access to the Building to inspect the work that still needed to be done. Plaintiffs refused. On August 21, 2024, Plaintiffs filed an Emergency Motion for Protective Order asking that the Court require the City to conduct any inspection of the Building within the confines of Federal Rule of Civil Procedure 34. Dkt. 24. Two days later, on August 23, 2024, the City entered the Building and performed an inspection. On September 11, 2024, the City filed its opposition to Plaintiffs' Emergency Motion. Dkt. 25. Noting the inspection had already occurred, the City claimed the issue was moot. In a short decision, the Court agreed. Dkt. 31 (finding the issue moot but encouraging the parties to work together for any future inspections).

On October 17, 2024, the City notified Plaintiffs that it would be holding a public

---

[4] As for Defendant Keane, Plaintiffs asserted substantive due process, tortious interference with contract, tortious interference with prospective economic gain, and defamation claims. Against Defendant Madsen, similar claims were levied except there is no defamation claim. As for the City, Plaintiffs assert procedural due process (*Monell*) and taking claims and ask for declaratory and injunctive relief. *See generally* Dkt. 21.

hearing on October 29, 2024, to "consider the report of the estimated costs necessary to stabilize the Union Block Building." Dkt. 29-3. The purpose of this meeting was to explore the possibility of Defendants taking over the project, completing the necessary renovations, and then seeking reimbursement from Plaintiffs after-the-fact.

On October 24, 2024, Plaintiffs filed another Expedited Motion for Temporary Restraining Order. Dkt. 29. This motion sought a temporary restraining order granting preliminary relief on numerous grounds. Most pressing, however, was a request that the Court "prohibit the City from holding [the] public hearing on October 29, 2024 . . . ." Dkt. 29-1, at 15. Plaintiffs argued the hearing was a continuation of Defendants' practice of depriving them of their due process rights. Plaintiffs also indicated a more thorough Motion for Preliminary Injunction would shortly follow.

Because of the urgent nature of Plaintiffs request regarding the public hearing, the Court expedited briefing *on that singular issue*. Dkt. 33.

In opposing Plaintiffs request to vacate the public hearing, Defendants explained the hearing was simply an opportunity for the City Council to "consider" whether it wanted to undertake the expense of repairing the Building, because Plaintiffs were not keeping up with repairs, but that, even if the measure passed, they would not be starting any work on the Building for some time. Dkt. 34, at 5.

The Court ultimately held that the City Council meeting could proceed but— consistent with Defendants' representations—should the measure pass, Defendants could not begin any "actual construction or repairs, or preparations for construction or repairs, until a later time . . . ." Dkt. 38, at 6–7. In doing so, the Court denied that portion of

Plaintiffs' Motion regarding the City Council hearing but held open the remaining issues to be determined later.

As an aside, Plaintiffs had also filed a Motion for Partial Summary Judgment on October 24, 2024, seeking summary judgment on their Due Process claims and asserting Defendants' practices and procedures were "a sham." *See generally* Dkt. 30-1.

As promised, on October 28, 2024, Plaintiffs filed a larger Motion for Preliminary Injunction. Dkt. 35. While this motion echoed much of what was presented in the Motion for Temporary Restraining Order, it also expanded upon those issues and requested an even broader injunction. *See generally id.*

The Court consolidated briefing on the outstanding issues from the original Motion for Temporary Restraining Order (Dkt. 29) with the Motion for Preliminary Injunction (Dkt. 35). Dkt. 40. It also set a hearing on those motions. Dkt. 41.

On December 12, 2024, it was Defendants turn to file an Expedited Motion for Temporary Restraining Order. Dkt. 48. Apparently, it came to Defendants' attention that some work was being done on the Building. *See generally id.* Defendants were unaware of the work and did not think permits were in place. Again, the Court requested an expedited response. Dkt. 49. Plaintiffs responded by explaining the work being done was at the behest of the Ada County Highway District ("ACHD") on the alley *behind* the Building, that ACHD had indicated the matter was exclusively within its purview, and that no City permits were needed. Dkt. 50. The Court denied Defendant's Motion to halt work and noted the parties should be prepared to discuss the matter at the already-scheduled (and fast approaching) hearing. Dkt. 51. At the hearing, the parties informed the Court that this issue

was under control. At least for now.

Recently, Defendants filed a Motion for Summary Judgment. Dkt. 53. As noted, Plaintiffs have also filed a Motion for Summary Judgment (Dkt. 30). The Court will not be delving into those issues at this time.

Thus, ripe for review are Plaintiffs' inter-related Motion for Temporary Restraining Order and Motion for Preliminary Injunction.

## III. LEGAL STANDARD

A plaintiff seeking a preliminary injunction or a temporary restraining order ("TRO") must establish "(1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest." *CTIA-The Wireless Ass'n v. City of Berkeley*, 854 F.3d 1105, 1114 (9th Cir. 2017) (cleaned up) (quoting *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008)).

A key difference between a TRO and a preliminary injunction is their respective durations. A TRO is typically for a limited time, while a preliminary injunction may extend until the end of the lawsuit, which could be months, if not years. *Innovation Law Lab v. Nielsen*, 310 F. Supp. 3d 1150, 1156 n.1 (D. Or. 2018).

Preliminary injunctions may be either prohibitory or mandatory. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co*., 571 F.3d 873, 878–79 (9th Cir. 2009). A prohibitory injunction preserves the status quo by preventing a party from taking some action before a determination on the merits of the action. *Id*. A mandatory injunction, in contrast, requires a party to take some action prior to a determination of the case on its

merits. *Id*.

Because mandatory injunctions "go[] well beyond simply maintaining the status quo," they are "particularly disfavored" and subject to a heightened burden of proof. *Diamond House of SE Idaho v. City of Ammon*, 381 F. Supp. 3d 1262, 1270 (D. Idaho 2019). Thus, a plaintiff must show "that the law and facts clearly favor [their] position, not simply that [they are] likely to succeed." *Garcia v. Google, Inc*., 786 F.3d 733, 740 (9th Cir. 2015) (emphasis in original). Generally, mandatory injunctions should not be granted "unless extreme or very serious damage will result" and should not issue in doubtful cases "or where the injury complained of is capable of compensation in damages." *Id*.

## IV. DISCUSSION

Because of the interrelated nature of Plaintiffs' Motion for Temporary Restraining Order and Motion for Preliminary Injunction—and the applicable legal standard—the Court will discuss the Motions in tandem.

To set the stage, however, the Court will review the requested relief sought in each of Plaintiffs' Motions and will provide some preliminary procedural thoughts.

As part of their Motion for Temporary Restraining Order (Dkt. 29), Plaintiffs sought both prohibitory and mandatory relief. From a prohibitory standpoint, Plaintiffs sought an order from the Court that did the following:

1. Prohibits the City from entering the Building without Plaintiffs' permission, a Court order, and/or compliance with the requirements of Federal Rule of Civil Procedure 34;

2. Prohibits the City from performing any repairs and/or renovations within or to the Building;

3. Prohibits the City from holding the public hearing on October 29, 2024, that it claims was scheduled to "consider the report of the estimated costs necessary to stabilize the Union Block Building;" and

4. Affirmatively requires the City to provide to Plaintiffs the "report of estimated costs" that was to be considered during the public hearing on October 29, 2024;

Dkt. 29-1, at 15. As part of a prior order, the Court ruled that Rule 34 might not specifically apply in these circumstances, and the parties should work together on any future site visits of the Building. *See generally* Dkt. 31. That order arguably took care of Plaintiffs' first request. As part of another prior decision, the Court denied Plaintiffs' request that it stop the public hearing from taking place. Dkt. 38. That resolved Plaintiffs' third request. As part of that decision, the Court did not specifically address Plaintiffs' fourth request. The Court does not know if Plaintiffs would still like a copy of the report (now that the hearing has passed), but, insofar as it may prove helpful in moving matters forward, that request is GRANTED. The City should provide a copy to Plaintiffs of the "report and estimated costs" that was presented at the hearing on October 29, 2024.

Plaintiffs also sought certain *mandatory* relief in their motion. They asked that the Court:

5. Affirmatively require[] the City to comply with the Boise ADB Code, and issue a detailed notice to Plaintiffs that outlines the specific conditions that it claims currently exist in the Building that continue to render the Building "dangerous;"

6. Affirmatively require[] the City to provide Plaintiffs with the meaningful notice required by the U.S. Constitution as to the conditions that it claim currently exist in the Building that continue to render the Building "dangerous;" and

7. Affirmatively require[] the City to provide Plaintiffs with the meaningful opportunity to be heard required by the U.S. Constitution as to the conditions that it claims currently exist in the Building that continue to render the Building "dangerous."

*Id*. at 16.

In their follow-up Motion for Preliminary Injunction, Plaintiffs request prohibitory relief via an order from the Court:

1. Prohibiting Defendants from: (A) entering the Building without Plaintiffs' permission, a Court order, and/or prior compliance with the requirements of Rule 34; (B) continuing to exercise dominion and control over the Building under the purported authority of the Boise ADB Code; (C) continuing to represent to the public that the Building is dangerous; and (D) controlling the repairs and/or renovations to be made therein, including making the repairs themselves.

Dkt. 35-1, at 40. Plaintiffs also seek mandatory relief:

2. Affirmatively requiring that the City review and approve Plaintiffs' amended submittals proposing Project changes that resolve the City's stated concerns;

3. Affirmatively requiring that Defendants renew Plaintiffs' building permits which expired as a result of Defendants' wrongful conduct;

4. Affirmatively requiring that the City provide the minimum due process protections that are Constitutionally-required with respect to all future hearings and proceedings concerning the condemnation of the Building; and

5. Affirmatively requiring that Defendants allow Plaintiffs to proceed with their renovations of the Building.

*Id*. at 40–41.

Defendants aptly noted at the hearing that there are really two things going on in this case. First, there are Plaintiffs' constitutional claims regarding events that *previously* happened—the inspection, the finding of dangerousness, the appeal hearing etc. But those prior interactions do not strictly serve as the basis for the instant disputes and round of

motions. The present matters are focused on the second category of issues—current problems between the parties.

Nevertheless, the first 20 pages or so of Plaintiffs' Motion for Preliminary Injunction are comprised of a detailed recitation of the facts of this case and how Defendants actions have clearly and unmistakenly violated their constitutional rights. Dkt. 35-1, at 3–21. It reads like a summary judgment motion. But this isn't summary judgment. Discovery is not yet closed. Those facts have not been established. To be sure, for Plaintiffs to obtain an injunction at this stage, they must show a likelihood of success on the merits of their claims. And to be fair, both parties have already filed Motions for Summary Judgment. That said, insofar as discovery is still ongoing—the deadline being June 25, 2025—and the present questions are *threshold* questions regarding success, the Court will take a step back as it looks at the evidence and argument. Additionally, Plaintiffs requested relief across their two present motions does not line up precisely with the underlying claims at issue in this case. That complicates this task as well.

Defendants begin their opposition by noting that Defendant Keane is no longer employed by the City and that Defendant Madsen—an assistant building official—does not have the authority to grant any of the requested relief. They also claim Defendants have not made any argument about their takings claim in the present Motion.[5] In reply, Plaintiffs clarify that they "have not asserted a takings claim against the City and have never intended to seek injunctive relief specifically against either Defendant Keane or Defendant

---

[5] Plaintiffs have not alleged a stand-alone takings claim in their First Amended Complaint. *See* Dkt. 21. There are, however, three references to the City's actions being a "taking." *Id*. at 23.

Madsen." Dkt. 46, at 2. Thus, the focus for the Court today is Plaintiffs' Due Process claims against the City. And this Order is *preliminary.* The Court is making initial findings to aid resolution of Plaintiff's current requests. It is not making a final determination on the underlying constitutional claims.

### A. Success on the Merits

The Fifth Amendment to the United States Constitution provides, in relevant part, that, "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Similarly, the Fourteenth Amendment to the United States Constitution provides, in relevant part, that, "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. "The Due Process Clause of the Fourteenth Amendment may give rise to claims under § 1983 for violation of (1) substantive due process and (2) procedural due process." *FlightCar, Inc. v. City of Millbrae*, 2014 WL 2753879, at *3 (N.D. Cal. June 16, 2014) (*citing Zinermon v. Burch*, 494 U.S. 113, 125 (1990)).

"The Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (cleaned up). A substantive due process claim arises from "a government deprivation of life, liberty, or property." *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998). On the other hand, a "§ 1983 action may be brought for a violation of procedural due process" where the government deprives the plaintiff of a constitutionally protected interest in life, liberty, or property without due process of law. *Zinermon*, 494 U.S. at 125.

In order to maintain a claim under 42 U.S.C. § 1983, two elements must be met: (1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States. *Kildare v. Saenz*, 325 F.3d 1078, 1085 (9th Cir. 2003). "The touchstone of procedural due process is notice and an opportunity to be heard." *Miranda v. City of Casa Grande*, 15 F.4th 1219, 1225 (9th Cir. 2021).

Defendants do not dispute they are state actors. They also do not dispute Plaintiffs have a protectable property interest in the Building. What they do dispute, however, is that their policies and procedures violated the Constitution's due process protections.

*1.  Notice*

Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950).

Plaintiffs first allege Defendants failed to provide meaningful notice to Plaintiffs of the Building's failures because the notice was not "clear, definite, explicit and unambiguous" such that its "meaning can be apprehended without explanation or argument." *Farrell v. Brown*, 729 P.2d 1090, 1095 (Idaho Ct. App. 1986). For example, they allege the notice did not comply with the City's own requirement that there be a "brief and concise description of the conditions found to render the building dangerous" and that the City's Building Official Senior Manager admitted the Notice and Order did not

comply.[6] 1997 ABD Code, § 401.2(2). They also allege the Notice and Order contained references to old code sections and this means either: 1) Defendants were confused about the process themselves, or 2) they were actively trying to confuse or mislead Plaintiffs.[7]

Defendants do not really engage in the details of Plaintiffs' arguments.[8] Instead, they take a broader approach and focus on the idea that the Notice is meant to "ensure that the opportunity for a hearing is meaningful." *City of West Covina v. Perkins*, 525 U.S. 234, 240 (1999). So, in their estimation, while the Notice and Order may not have been a work of art, it provided the information necessary to apprise Plaintiffs of what the issues were, why the dangerous designation was appropriate, and what would be discussed at the upcoming hearing.

The Court understands Plaintiffs' arguments that the Notice and Order did not have a lot of information and *might* not have complied strictly with the 1997 ABD Code. But the question here is not whether the Notice and Order complied with the Code, but rather, whether the Notice and Order provide sufficient details regarding the property interest it sought to take away from Plaintiffs and whether it afforded Plaintiffs an opportunity to respond. In other words, the Court is looking to see—first and foremost—if the Notice and Order "apprise[d]" Plaintiffs of "the pendency of the action and afford[ed] them an

---

[6] Saying the City admitted fault on this issue is a stretch based on the actual testimony. *See* Dkt. 36-2, at 15–18.

[7] This second assertion is overblown as well. At most, it could be Defendants used an old form or failed to edit citations in the form. There is no evidence Defendants were purposefully trying to confuse Plaintiffs.

[8] As for Defendant's first argument about completeness, it appears (from the deposition testimony) that Defendants' position is the Correction Notice that accompanied the Notice and Order *taken together* provided sufficient detail to qualify under the "description" prong of the 1997 ABD Code.

opportunity to present their objections." *Dusenbury v. United States*, 534 U.S. 161, 168 (2002) (*citing Mullane*, 339 U.S. at 314).

Under the circumstances, it is hard for the Court to find the Notice and Order wholly inadequate as Plaintiffs contend. The Notice and Order listed the problems with the Building (Dkt. 37-3, at 1–2)[9] and that these problems resulted in the Building being designated as "dangerous" (Dkt. 37-3, at 1). It also outlined how Plaintiffs could appeal the decision and the appropriate timeline. Dkt. 34-1, at 2.

In addition to the Notice and Order, Plaintiffs had "notice" in the sense that there were multiple meetings where counsel for both sides discussed the appeal process, what form the appeal hearing would take, and other pertinent details. As such, on the current record, the Court finds it difficult to say Plaintiffs will find success on this element. Their arguments are not without merit, and the Court does have some questions, regarding the thoroughness of the notice. But at this juncture, there is not enough to say Plaintiffs wholly failed in giving notice, or rather, that Defendants can likely succeed on this claim.

### 2. Pre-deprivation Hearing

Plaintiffs next contend they were entitled to a hearing *before* the deprivation of their property interest (e.g. even before the City issued its Notice and Order). They argue the only reason to not hold a pre-deprivation hearing is if the situation presents an emergency. They contend there was no emergency here for various reasons.

Defendants counter there was clearly an emergency because there had been a fire in

---

[9] And the Correction Notice expounds upon those items. Dkt. 37-7, at 1–3

the Building, and the necessary renovations were outstanding. They argue "the necessity of quick action by the State or the impracticality of providing any meaningful pre-deprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process." *Parratt v. Taylor*, 451 U.S. 527, 539 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327, 331–31 (1986).

Defendants also contend Plaintiffs have missed the mark a little with their argument here. They contend any challenge to a pre-deprivation process (or lack of one) falls within Plaintiffs' *Monell* claim and looks more broadly to the City's policies themselves, not this specific instance. In other words, Defendants argue that whether a pre-deprivation hearing took place *in this case* is beside the point and, as noted, they can justify the lack of a hearing under the circumstances. The real question in Defendants' mind is whether the City has a policy of prematurely depriving people of their constitutional rights without any type of process. But they return to the same conclusion: there was no pre-deprivation process required here because there was an emergency, the Building was dangerous, and the City has an obligation to ensure public safety.

Again, on the current record, there is nothing to suggest the lack of an earlier hearing—even if required—was wrong considering the exigent circumstances. Additionally, there is no evidence that the City has a standing policy or practice of denying parties an opportunity to be heard. Thus, the Court does not see a likelihood of success for Plaintiffs here either.

MEMORANDUM DECISION AND ORDER - 17

### 3. *Post-deprivation Hearing*

Finally, Plaintiffs assert the City's appeal hearing scheduled for January 30, 2024, was unsatisfactory and deprived them of their Due Process rights. Defendants swiftly return by noting Plaintiffs did not appear at the hearing so they cannot know whether the hearing was sufficient or not. Defendants' point is well taken.

The Court has recently handled a case dealing with a similar situation. A Plaintiff filed a Motion for Temporary Restraining Order to halt a hearing. Plaintiff opined the hearing was going to violate her Due Process rights and that she would not be appearing at the hearing. The relevant organization (Boise State University) agreed to hold off on the hearing based upon the filing of the lawsuit but asked the Court (in opposing the TRO) to not rule on the Due Process question until the hearing could actually be held. The Court agreed, finding that the Plaintiff was "aggravating the problem she complained of" by refusing to engage in the process. *Dudley v. Boise State Univ.*, 2022 WL 17851833, at *6 (D. Idaho Dec. 22, 2022). The Court determined it could not adequately rule on that claim because the process was "ongoing." *Id*. at *9.

In a somewhat similar vein, Plaintiffs here have not done themselves any favors. They allege the hearing violated their due process, but they failed to show up at the hearing. Its only speculation, of course, but the meeting could have resulted in a favorable outcome for Plaintiffs. Nobody will ever know. At the very least, if Plaintiffs had engaged in the process, they very well could have secured an extension or some other type of relief. And they'd be able to show with particularity what "process" Defendants afforded them (or did not afford them). It appears the parties were working well together in preparation for the

hearing. Thus, the Court finds it odd that Plaintiffs then decided to just not show up.

Then to claim they suffered an injury is somewhat hard to swallow. The Court will not go so far as to say this forecloses Plaintiffs claims—although other courts have so found. *See, e.g., Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412, 423 (3d Cir. 2008) (holding that, where an administrative appeal is sufficient and available, and a plaintiff foregoes participation, a procedural due process claim is barred). But it's a weaker argument when one claims to have been deprived of something when one didn't show up to see what, if anything, would have happened.

Again, the Court finds Plaintiffs have not carried their burden at this stage.

## B. Remaining Winter Factors

Neither side discussed the remaining *Winter* factors in any detail, so the Court will forego a discussion on the factors as well, other than to express the factors do not weigh substantially in favor of either party.

## V. CONCLUSION

Due Process questions are always a complicated inquiry for the Court. As it has outlined in two recent decisions, a Plaintiff cannot simply disagree with the process given in order to succeed. There must be some true deprivation. In *IRWS, LLC v. Elmore Cnty.*, the Court reviewed the lengthy "process" the parties in that case had engaged in as it related to the revocation of a condition use permit for a landfill and noted that, while the Plaintiff "may disagree with the outcome of the process, or even the process itself, [] it cannot claim to have received *no* process, nor can its disagreement with the process (or outcome) rise to the level of a constitutional violation." 709 F. Supp. 3d 1158, 1167 (D. Idaho 2023).

MEMORANDUM DECISION AND ORDER - 19

The Court reiterated that same refrain a few months later in the context of the student who brought the due process claims against Boise State University discussed *supra*. *See Dudley,* 2024 WL 1973596, at *11 (explaining that Plaintiff's qualms with the "exact procedures employed [before, during, and after the hearing] is not dispositive of anything. BSU is not required to comply with the demands of every student and how he or she believes the hearings should be conducted").

A similar result is appropriate in this case, at least at this stage. The City provided Plaintiffs with Notice of their alleged violations and the appeal hearing. A pre-deprivation hearing was unnecessary considering the safety concerns the Building posed. Counsel for Plaintiffs was then involved in pre-hearing negotiations, but Plaintiffs never showed up to the hearing. To be clear, not showing up at the hearing is not a bar to their claims. Nor does it absolve Defendants of their constitutional obligations. But it is hard for Plaintiffs to claim there were no procedures or processes provided by Defendants when they refused to continue with the process Defendants proposed.

And the issues are all the more nebulous at this stage. The Motions here read like summary judgment motions on the underlying causes of action. Again, the Court must review the facts for a likelihood of success analysis, but it usually does so at the beginning of the case without the benefit of discovery. Here, however, there has been *some* discovery, but there is still more to go. The Court finds itself in a procedurally difficult position.

Finally, the requested relief is not *directly* tied to the claims. Said differently, the relief requested is broader than the claims. For example, the Court could find Plaintiffs have a likelihood of success on their claims and still deny some of their requests for relief

MEMORANDUM DECISION AND ORDER - 20

(such as those related to future building permits). Conversely, the Court could find Plaintiffs have not met their burden at this stage, but still order Defendants to "comply with the law"—which is the essence of most of Plaintiffs' requests.

When weighing the competing arguments, the Court cannot say Plaintiffs have met their "likelihood of success" burden of showing a Due Process violation has occurred. Thus, the Motion for Temporary Restraining Order and Motion for Preliminary Injunction will be denied within the *Winter* framework. That said, this finding does not mean the Court cannot rule on some of Plaintiffs' current requests or otherwise assist the parties in moving this case along.

As noted, the Court has already dealt with some of the issues raised in Plaintiffs original TRO (such as the hearing). There are other requests Plaintiffs have made that are, to put it bluntly, a little "soft around the edges." For example, Plaintiffs repeatedly ask that the Court "affirmatively require[] the City to" comply with their constitutional duties. Dkt. 38, at 16. The Court is happy to remind the City of its constitutional duties and assumes it will comply. Other requests, however, go too far. For example, the Court will not require that the City review and approve or renew[10] Plaintiffs' proposals, permits, or changes. That decision is for the City to make.

The Court is, frankly, not accustomed to taking such an active role in the day-to-day issues of any case or controversy. However, it seems necessary in this case as the

---

[10] In particular, the "approval" component of this request bothers the Court. Absent extremely unusual circumstances, the Court cannot see itself stepping into the shoes of the City and approving or renewing any permits or licensures. Not only is that outside of the Court's jurisdictional purview, its far afield of the Court's area of expertise.

parties are continually at an impasse. Lest it be lost on anyone, both parties want the same outcome here: a safe and operable building. It seems, however, that hard feelings and stubborn minds have slowed things to an almost standstill. But something needs to happen in order to evaluate where things stand today and how the project will move forward. Thus, the Court orders as follows:

1. Within fourteen (14) days of the date of this decision, the parties will meet and confer regarding a date when an inspection by the City of the Building can take place.

2. The date of the inspection must be set within thirty (30) days *of the date of the meet and confer*.

3. On the agreed-upon date, the City will inspect the building. Any party or person associated with this case who wishes to be present may be present.

4. Within seven (7) days after the inspection, The City will provide Plaintiffs with a report. That report will contain a *detailed list* of any conditions that *currently exist* rendering the Building dangerous. The City should also include a *detailed list* of any outstanding repairs (whether or not they contribute to the dangerous diagnosis).

5. Within 14 days of receipt of the report, the parties will then meet and confer again. The City will review any proposals Plaintiff has regarding the items identified in the report. Plaintiffs and the City will work together to review (and hopefully approve) any outstanding permits so that work can move forward.

6. Plaintiffs must then submit a *detailed timeline* for the completion of the items

MEMORANDUM DECISION AND ORDER - 22

identified in the report. The City may (at its discretion) begin getting bids for the work as well (pursuant to the City Council's prior vote that it *may* need to take over repairs). However, the City cannot affirmatively take over at this time. Plaintiff will have this final "chance" to do the repairs themselves.

This is not a "do-over." The Court is not requiring the City to start wholly from scratch and reissue its notice or re-hold any hearings, but it is not prohibiting that either. Frankly, it might make sense to start with a clean slate. But for now, what the Court has outlined above should get the ball rolling.

The Court would like to emphasize no part of this Order impacts the pending Motions for Summary Judgment. Again, those briefs and issues relate to what happened *previously* and whether there was a constitutional violation. Once briefing is complete, the Court will (presumably) hold a hearing and issue a decision.

## VI. ORDER

1. Plaintiffs' Motion for a Temporary Restraining Order (Dkt. 29) is GRANTED in PART and DENIED in PART as outlined above.

2. Plaintiffs Motion for a Preliminary Injunction (Dkt. 35) is GRANTED in PART and DENIED in PART as outlined above.

DATED: January 30, 2025

David C. Nye
Chief U.S. District Court Judge